IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| DAN FRANKENSTEIN, individually, and on behalf of all others similarly situated, and on behalf of the HMSHOST 401(k) RETIREMENT SAVINGS PLAN AND TRUST,<br><br>      Plaintiff,<br><br>   v.<br><br>HOST INTERNATIONAL, INC.; HMSHOST 401(k) RETIREMENT SAVINGS PLAN AND TRUST RETIREMENT COMMITTEE; COLEMAN LAUERBACH; and DOES NO. 1-10, Whose Names Are Currently Unknown,<br><br>      Defendants. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT** |

## **COMPLAINT**

1.     This case arises from Defendants' refusal to properly defer compensation paid to Plaintiff, Dan Frankenstein ("Plaintiff" or "Mr. Frankenstein"), and other participants of the HMSHost 401(k) Retirement Savings Plan and Trust (the "Plan") pursuant to the express terms of the Plan.

2.     The Plan had more than $300 million in assets with almost 19,000 active and more than 21,000 total participants as of December 31, 2018.  Defendants are the Plan's fiduciaries: the Plan sponsor, Host International, Inc. ("Host International"), and the Plan's Retirement Committee, membership of which includes Coleman Lauerbach ("Mr. Lauerbach") and DOES No. 1-10, whose names are currently unknown (collectively, "Defendants").

3. Mr. Frankenstein brings this action on behalf of himself, all other similarly-situated Plan participants and beneficiaries (collectively, the "Class," as defined in detail below), and the Plan, to recover the benefits due to Mr. Frankenstein and the Class under the express terms of the Plan; to enforce his and the Class's rights under the terms of the Plan; to hold Defendants liable to the Plan for their breaches of fiduciary duties; for injunctive and declaratory relief; and for all other appropriate relief under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*.

## I.   THE PARTIES

4. Plaintiff Dan Frankenstein is a participant of the Plan, which is a defined contribution, individual account, employee pension benefit plan under 29 U.S.C. § 1002(2)(A) and § 1002(34). He is a resident and citizen of Newport Beach, California, and has been employed by Host International since July 5, 2011. Mr. Frankenstein is currently employed by Host International as a bartender. He brings this action on behalf of himself, all other similarly situated members of the Plan, and on behalf of the Plan itself.

5. Defendant Host International is a Delaware corporation with its current headquarters in Bethesda, Maryland. It provides catering services to travelers, offering prepared meals and other food, beverages and merchandise at airports, on toll roads, restaurants, and other travel and entertainment venues. Host International is the Plan sponsor, Plan administrator, and a fiduciary of the Plan under ERISA pursuant to 29 U.S.C. §§ 1002, 1102.

6. The defendant Retirement Committee has the full and complete authority, responsibility, and control over the management, administration, and operation of the Plan pursuant to the Plan Document;[1] administers the Plan; and is a named fiduciary and/or a

---

[1] The Plan, as with other ERISA plans, is "established and maintained pursuant to a written

fiduciary to the Plan under ERISA pursuant to 29 U.S.C. §§ 1002, 1102. The Retirement Committee maintains its address at Host International's headquarters in Bethesda, Maryland. The Retirement Committee and its members are appointed by Host International to administer the Plan.

7. Defendant Coleman Lauerbach is the Vice President of Human Resources at Host International, a member of the Retirement Committee, and, by virtue of his membership, is a fiduciary of the Plan.

8. Defendants Does Nos. 1-10 are members of the Retirement Committee and, by virtue of their memberships, are fiduciaries to the Plan. Mr. Frankenstein is currently unable to determine the membership of the Retirement Committee despite reasonable and diligent efforts, as it appears that the membership of the Retirement Committee is not provided to the public. As such, these defendants are named Does 1-10 as placeholders, and Mr. Frankenstein will move, pursuant to Rule 15 of the Federal Rules of Civil Procedure, to amend this Complaint to name the members of the Retirement Committee as defendants as soon as their identities are discovered.

## II.     JURISDICTION AND VENUE

9. Mr. Frankenstein seeks relief on behalf of himself, all others similarly situated persons and on behalf of the Plan, pursuant to ERISA's civil enforcement remedies with respect to fiduciaries and other interested persons under ERISA Section 409, 29 U.S.C. § 1109 and 29 U.S.C. § 1132.

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

---

instrument," *i.e.*, the "Plan Document." 29 U.S.C. § 1102(a)(1).

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the Plan is administered in this District, the breach or violation took place in this District, and one or more of Defendants reside in this District.

### III.   BACKGROUND FACTS

#### A.   THE RELEVANT PLAN PROVISIONS CONCERNING PARTICIPANT COMPENSATION DEFERRALS AND HOST INTERNATIONAL'S TIPS POLICY

12. Pursuant to Subsection 1.07(a) of the Adoption Agreement of the Plan Document ("Adoption Agreement"),[2] Plan participants "may elect to have a portion of their Compensation contributed to the Plan on a before-tax basis" pursuant to 26 U.S.C. § 401(k), with a deferral limit of 75% of their "Compensation." Article 5.03 of the Plan Document refers to Subsection 1.07(a) for an active participant's deferral contribution election.

13. The Plan Document defines "Compensation" as "wages," as set forth in 26 U.S.C. § 3401(a).  26 U.S.C. § 3401(a) defines "wages" as "all remuneration . . . for services performed by an employee for his employer," while 26 U.S.C. § 3401(f) expressly provides that, "[f]or purposes of subsection (a), the term 'wages' includes tips received by an employee in the course of his employment." Meanwhile, Section IV.D. of the Summary Plan Description ("SPD")[3] expressly acknowledges that "all reported gratuities [are] eligible compensation when determining the eligible contribution amount for the Plan."

---

[2] The Plan Document that governs the Plan is based on a standardized instrument created by the Plan's third-party service provider, Fidelity, and incorporates the Adoption Agreement to enumerate individualized details for the Plan Document, such as the named fiduciaries and certain exclusions.  The Plan Document and the Adoption Agreement are attached hereto as Exhibits "A" and "B," respectively.

[3] A summary plan description "provide[s] communication with beneficiaries about the plan, but . . . their statements do not themselves constitute the terms of the plan." *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011).  The SPD is attached hereto as Exhibit "C."

4

14. Host International has established a policy that requires tipped employees, including Plaintiff, to report credit card tips recorded by customers on their credit card receipt into the point of sale system ("Tips Policy"). The Tips Policy then requires that the credit card tips be paid in cash to the employee at the end of his or her shift, interfering with Plaintiff's and Class members' ability to defer income under the terms of the Plan and improperly discriminating against tipped employees. Host International does not provide its employees with the option to receive those tips later with their compensation paid through payroll.

15. When determining the taxable earnings for its employees, Host International includes the credit card tips that it requires Plaintiff and other tipped employees to report. It then calculates and applies the taxes and withholding due on those earnings, as well as payroll deductions for benefits, including the deferral election for the Plan, before making payments to its employees through payroll for compensation.

16. Because Host International mandates that credit card tips, which make up a significant portion of certain employees' "Compensation," be paid out to employees at the end of the shift rather than through payroll, there are frequently insufficient amounts paid through payroll to cover the entirety of the employees' deferral election for the Plan. In those instances, employees are permitted only to make after-tax contributions to the Plan to make up for the shortfall. Nothing in the Plan Document or the Adoption Agreement, however, excludes tip income from Compensation or requires or provides for Host International's mandatory Tips Policy.

## IV.    MR. FRANKENSTEIN'S EXHAUSTION OF ADMINISTRATIVE REMEDIES

17.     In early 2019, Plaintiff reached out to Mandy Taggart, Host International's Human Resources Manager, about the Plan's failure to follow his election to defer 25% of income under the Plan.

18.     Regina Dowdy, the Senior Manager of Defined Contribution Plans for Host International, responded to Plaintiff's inquiry in a letter dated March 11, 2019.  In her letter, Ms. Dowdy explained that pre-tax deferrals could only be made through employee compensation paid via payroll; as the tips at issue are paid separately, "it is often the case that tipped employees will not have their full compensation available for pretax deferrals."

19.     On or about March 17, 2019, Plaintiff sent a follow-up inquiry to Ms. Dowdy via email, noting that, after reviewing the Plan Documents, he did not see any terms or provisions that would restrict his (or other participants') ability to defer his credit card tips.

20.     Carol Russell ("Ms. Russell"), a Claims Administrator for Host International, responded to that inquiry in a letter dated April 10, 2019.  Construing Plaintiff's letter as a claim, Ms. Russell asserted that the Plan's limitation of pre-tax deferral contributions to "effectively available Compensation" precluded Plaintiff's ability to defer his reported credit card tips:

> You correctly point out that the Plan, at Section 5.03, states that a participant is not permitted to make Deferral Contributions in excess of his "effectively available Compensation" and that "effectively available Compensation" is a participant's Compensation remaining after all applicable amounts have been withheld (e.g., tax-withholding and withholding of contributions to a cafeteria plan).  However, under the federal tax law and applicable IRS rules and guidance, the withholding of federal and state income tax, FICA taxes and Medicare taxes is (i) required on the *amount* of tips reported by employees, but not on the amount of *unreported* tips, and (ii) the applicable tax withholdings are required to be taken from *regular wages* (but *not* from tips) or from amounts that the employee pays to the employer to fund those withholdings.  When these legal requirements for tax withholding are applied, together with the "effectively available Compensation" limitation on the making of deferrals in the Plan, it is clear that deferrals of Compensation under the Plan cannot be made from a mere disbursement or

6

> payment of unreported tips to you, but rather must be made on "effectively available Compensation" in your regular paycheck.
>
> In other words, even though reported tips are included in Compensation for purposes of determining the overall amount of deferrals/contributions to the Plan, "counting" tips as Compensation does not mean the tip amounts are effectively available to withhold deferrals from.  As such, to the extent that regular wages are insufficient to withhold elected deferrals from, the Plan allows for a participant's contribution of after-tax amounts."

(Emphasis in original.)

21. Ms. Russell's letter then goes on and appears to assert that the credit card tips, which Host International requires its tipped employees to report before paying them back out and uses to determine their taxable earnings, are somehow not "employee-reported tips":

> You also separately state that your credit card tips are collected by HMSHost and then paid to you as "Compensation," as defined under the Plan.  From this statement you then conclude that the Company should be deferring and paying into your Plan account your elected deferral percentage from the credit card tips paid to you daily.  However, as stated above, the IRS requires that we recognize as Compensation only tips reported to us by employees.  The SPD, at section IV (as previously referenced and discussed in our March 11 letter to you) also states that Plan contributions based on tips include as "eligible compensation" only your "reported gratuities." Therefore, the mere payment or disbursement of credit card tips to you daily or at the end of a shift does not constitute the payment of employee-reported tips.  In addition, such daily payments are not combined with the payment of regular wages.  This is important because, as described above, we can only withhold income tax, FICA, and Medicare imposed on tips from available regular wages in order to satisfy those withholding obligations with respect to your tip amounts.  And, further, only after satisfying those required withholding amounts can we determine if we have "effectively available Compensation" upon which deferrals can be taken for Plan purposes.

22. Ms. Russell's explanations in her letter are illogical.  First, the as noted above, all the credit card tips are clearly "reported tips," as Host International requires its employees to report them and then uses those reports to calculate the employees' taxable earnings.  But even if, *assuming arguendo*, not all credit card tips are reported, at least the portion that Host International uses to calculate the employees' taxable earnings are "reported tips." And those

7

"reported tips" are "eligible compensation," as the SPD provides and Ms. Russell concedes, and thus should be deferrable.

23. According to Ms. Russell, however, these "reported tips" are not "effectively available to withhold deferrals from" because "federal tax law and applicable IRS rules and guidance" only permit withholding federal and state income tax, FICA taxes, and Medicare taxes from the employee's regular wages, and not tips. This is a *non sequitur*. While federal or state withholding laws may only permit such taxes to be drawn from an employer's regular wages, there is nothing in federal or state withholding laws prohibiting Defendants from using a separate mechanism to allow Plan participants to defer their reported credit card tips according to their elections. Likewise, there is no provision in the Plan that carves out reported credit card tips from being included as "effectively available Compensation" qualifying for pre-tax deferrals.

24. Plaintiff then followed up with a letter to the Retirement Committee and Plan Administrator on or about May 20, 2019, again explaining that his credit card tips were not properly deferred into the Plan.

25. Mr. Lauerbach responded on behalf of the Retirement Committee in a letter dated June 7, 2019, characterizing Plaintiff's May 20, 2019 letter as a "request for a review on appeal" of Ms. Russell's April 10, 2019 letter. In that letter, Mr. Lauerbach upheld the denial and stated, in pertinent part, that, "[a]s we have previously explained in [Ms. Russell's April 10, 2019 letter] and in prior correspondence, an Employer *cannot*, under the terms of the Plan and federal tax law, make your elected pre-tax deferrals of tip Compensation out of anything *other than* your regular wages paid through payroll that remain after taking deductions for all required tax withholdings and other authorized deductions from your pay." As with Ms. Russell's April 10, 2019 letter, Mr. Lauerbach did not explain how federal and state withholding laws prohibit

Defendants from using a separate mechanism to allow Plan participants to defer their reported credit card tips, nor did he refer to any provision in the Plan that prohibits such deferrals or carves out reported credit card tips from being included as "effectively available Compensation" qualifying for pre-tax deferrals.

26. Finally, Mr. Lauerbach's June 7, 2019 letter informed Mr. Frankenstein that he had a right to bring suit contesting the denial of his claims within 12 months after the date of that letter.

## V.   ERISA'S FIDUCIARY STANDARDS

27. ERISA Section 404 provides, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
>
> (A) for the exclusive purpose of:
>
> (i) providing benefits to participants and their beneficiaries; and
>
> (ii) defraying reasonable expenses of administering the plan.
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
>
> . . .
>
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III.

29 U.S.C. § 1104(a).

## VI.   CLASS ALLEGATIONS

28. This action is brought as a class action by Mr. Frankenstein on behalf of himself and the Class, defined as follows:

> All current and former participants of the HMSHOST 401(k) Retirement Savings Plan and Trust who received reported tips as compensation and had a deferral election in place

9

at the time they received the reported tips within six years of the date this action was filed.

Excluded from the Class is the Judge to whom this case is assigned and any other judicial officer having responsibility for this case, and Defendants.

29. This action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

30. <u>Numerosity</u>. Plaintiff is informed and believes that there are almost 19,000 active and more than 21,000 total Plan participants, of which a significant percentage would be members of the Class. As a result, the members of the Class are so numerous that their individual joinder in this action is impracticable.

31. <u>Commonality</u>. There are numerous questions of fact and/or law that are common to Plaintiff and Class members, including, but not limited to the following:

    a. Whether the Plan Document requires Defendants to apply the deferral elections of Plaintiff and the Class to the reported tips they received;

    b. Whether Defendants improperly denied the benefits claims made by Plaintiff and Class members regarding Defendants' failure to apply Plaintiff and Class members' deferral elections to the reported tips as alleged herein;

    c. Whether Defendants acted as fiduciaries to the Plan under ERISA when they failed to apply the deferral elections of Plaintiff and members of the Class to their reported tips as alleged herein;

    d. Whether Defendants breached their fiduciary duties under ERISA when they failed to apply the deferral elections of Plaintiff and members of the Class to their reported tips as alleged herein; and

    e. Whether and what form of relief should be afforded to Plaintiff and the Class.

32. <u>Typicality</u>.  Plaintiff, a member of the Class, has claims that are typical of all of the members of the Class.  Plaintiff's claims and all of the claims of the members of the Class arise out of the same uniform course of conduct by Defendants and arise under the same legal theories that are applicable as to all other members of the Class.

33. <u>Adequacy of Representation</u>.  Plaintiff will fairly and adequately represent the interests of the members of the Class.  Plaintiff has no conflicts of interest with or interests that are any different from the other members of the Class.  Plaintiff has retained competent counsel experienced in class action and other complex litigation, including class actions under ERISA.

34. <u>Predominance</u>.  Common questions of law and fact predominate over questions affecting only individual members of the Class, and the Court, as well as the parties, will spend the vast majority of their time working to resolve these common issues.  Indeed, the only individual issues of significance will be the exact amount of damages recovered by each Class member, the calculation of which will ultimately be a ministerial function and which does not bar certification.

35. <u>Superiority</u>.  A class action is superior to all other feasible alternatives for the resolution of this matter.  The vast majority, if not all, of the members of the Class are unaware of Defendants' breaches of fiduciary duty such that they will never bring suit individually.  Furthermore, even if they were aware of the claims they have against Defendants, the claims of virtually all members of the Class would be too small to economically justify individual litigation.  Finally, individual litigation of multiple cases would be highly inefficient, a gross waste of the resources of the courts and of the parties, and potentially could lead to inconsistent results that would be contrary to the interests of justice.

36. <u>Manageability</u>. This case is well suited for treatment as a class action and easily can be managed as a class action since evidence of both liability and damages can be adduced, and proof of liability and damages can be presented, on a Class-wide basis, while the allocation and distribution of damages to members of the Class would be essentially a ministerial function.

37. Defendants have acted on grounds generally applicable to the Class by uniformly subjecting Class members to their policy of refusing to apply their deferral elections to their reported tips. Accordingly, injunctive relief, as well as legal and/or equitable monetary relief (such as disgorgement and/or restitution), along with corresponding declaratory relief, are appropriate with respect to the Class as a whole.

## COUNT I
### Recovery Of Benefits – ERISA § 502(a)(1)(B)

38. Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

39. ERISA § 501(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), authorities a participant or beneficiary of a plan to bring a civil action to recover benefits due under the terms of the plan, to enforce his/her rights under the terms of the plan, and to clarify his/her rights to future benefits under the plan.

40. Pursuant to the Plan Document, Plaintiff and the Class were (and are) entitled to contribute a portion of their reported tips based on their deferral elections, and receive benefits based on those contributions.

41. Defendants acted contrary to the Plan Document by preventing Plaintiff and the Class from contributing a portion of their reported tips based on their deferral elections.

42. In addition, by denying Plan participants who are tipped employees the right to defer reported tips, Defendants have violated the anti-discrimination provision of ERISA § 510,

29 U.S.C. § 1140, which prohibits discriminatory treatment of participants on account of available entitlements due under the Plan. While highly-compensated and/or non-tipped employees are permitted to apply their pre-tax deferral election to the entirety of their reported income, tipped employees such as Plaintiff are only permitted to defer a portion of their reported income, *i.e.*, the income they receive from payroll, but not the income from reported credit card tips.

43. Accordingly, Plaintiff asserts this claim on behalf of himself and the Class to enforce their rights under the terms of the Plan and to recover those benefits due to them under the terms of the Plan.

## COUNT II
### Breach of Fiduciary Duty – ERISA § 502(a)(2)

44. Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

45. Defendants are fiduciaries to the Plan under ERISA § 3(21)(A), 29 U.S.C. 1002(21)(A), based on the discretionary authority and responsibilities they assumed and/or were granted for administering the Plan.

46. ERISA § 502(a)(2) authorizes a participant or beneficiary to bring a civil action to obtain appropriate relief for breaches of fiduciary duty on behalf of a plan, to hold the breaching fiduciary personally liable to make good to such plan any losses to the plan resulting from each such breach, and any other equitable or remedial relief as the court may deem appropriate.

47. Defendants' administration of a 401(k) Plan participant's right to defer his or her reported tips contradicts the Plan Document and potentially jeopardizes the tax-qualified status of the Plan.

48. In so doing, Defendants have breached ERISA §404(a)(1)(D) by failing to act in accordance with the documents and instruments governing the Plan.

49. Moreover, Defendants have breached ERISA §404(a)(1)(B) by failing to act with the care, skill, prudence, and diligence under the circumstances then prevailing of a prudent man acting in a like capacity.

50. Upon information and belief, Defendants failed to prudently consider their interpretation and administration of a Plan participant's right to defer reported tips. Instead, Defendants appear to have simply adopted an arbitrary position denying Plan participants the right to defer reported tips paid by credit card and demanded that participants convert the tips to cash at the end of each shift, thereby avoiding the need to follow the participant's election to defer a percentage of the income.

51. As a result, the Plan has suffered losses from, *inter alia*, the contributions from Plaintiff and the Class, the matching contributions from the Plan sponsor, and the profits those contributions would have accrued as Plan assets.

52. In addition, by interfering with the participants' or beneficiaries' attainment of rights under ERISA and denying Plan participants who are tipped employees the right to defer reported tips, Defendants have violated the anti-discrimination provision of ERISA § 510, 29 U.S.C. § 1140 and breached their duties of loyalty and prudence by interfering with Plaintiff's ability to defer income under the terms of the Plan and jeopardizing the tax-qualified status of the Plan. While highly-compensated and/or non-tipped employees are permitted to apply their pre-tax deferral election to the entirety of their reported income, Defendants interfere with Plaintiff's ability to attain rights under the Plan by precluding him and other tipped employees from deferring a portion of their reported income from reported credit card tips.

53.     Accordingly, Plaintiff asserts this claim on behalf of himself and the Class, and on behalf of the Plan, to hold Defendants personally liable to make good to the Plan the losses resulting from their breaches of fiduciary duties, as well as declaratory and injunctive relief to enjoin the illegal practices of Defendants described herein, and to obtain such appropriate equitable relief as may be necessary under the circumstances.

## COUNT III
### Breach of Fiduciary Duty – ERISA § 502(a)(3)

54.     Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

55.     ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a civil action "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

56.     Pursuant to the 401(k) Plan Document, Plaintiff and the Class were entitled to contribute a portion of their reported tips based on their deferral elections, and receive benefits based on those contributions.

57.     Defendants refused, and continue to refuse, to comply with the terms of the Plan with respect to Plaintiff's and the Class's rights to contribute a portion of their reported tips to the Plan based on their deferral elections, and receive benefits based on those contributions.

58.     Upon information and belief, Defendants failed to prudently consider their interpretation and administration of a Plan participant's right to defer reported tips. Instead, Defendants appear to have simply adopted an arbitrary position denying Plan participants' rights

15

to defer reported tips based on Host International's tax withholding practices, thereby risking the qualified status of the Plan.

59. In addition, by denying Plan participants who are tipped employees the right to defer reported tips, Defendants also have violated and continue to violate ERISA § 510, 29 U.S.C. § 1140, by discriminating against Plan participants or beneficiaries and interfering with participants' or beneficiaries' attainment of rights under ERISA. While highly-compensated and/or non-tipped employees are permitted to apply their pre-tax deferral election to the entirety of their reported income, Defendants have knowingly and intentionally interfered with the rights of the tipped employees through the mandatory Tips Policy, precluding Plaintiff and Class members from deferring a substantial portion of their reported income, *i.e.*, the income they receive from payroll, but not the income from reported credit card tips.

60. Accordingly, Plaintiff seeks declaratory and injunctive relief on behalf of himself and the Class to enjoin the illegal practices of Defendants described herein, and to obtain such other appropriate equitable relief as may be necessary under the circumstances recognizing their rights to those benefits.

WHEREFORE, Plaintiff, on behalf of himself, the Class, and the Plan, demands judgment against Defendants for the following relief:

(a) an Order declaring this action to be maintainable as a class action and appointing Plaintiff as the representative of the Class and his counsel as counsel for the Class;

(b) a declaratory judgment that Defendants have acted contrary to the Plan Document by preventing Plaintiff and the Class from contributing a portion of their reported tips based on their deferral elections;

(c) a declaratory judgment that Defendants have violated the anti-discrimination provision of ERISA § 510, 29 U.S.C. § 1140, by interfering with the participants' or beneficiaries' attainment of rights under ERISA and preventing Plaintiff and the Class from contributing a portion of their reported tips based on their deferral elections;

(d) an Order enjoining Defendants from continuing to engage in the breaches of fiduciary duty and violations of law described herein;

(e) an accounting to the Plan of the monies that would have been contributed to the Plan and the profits such monies would have generated but for Defendants' breaches of their fiduciary duties;

(f) disgorgement, restitution, and/or restoration to the Plan of the monies that would have been contributed to the Plan and the profits such monies would have generated but for Defendants' breaches of their fiduciary duties;

(g) payment of the benefit claims made by Plaintiff and the Class;

(h) Pre-judgment and post-judgment interest at the maximum permissible rates, whether at law or in equity;

(i) Attorneys' fees, costs, and other recoverable expenses of litigation; and

(j) Such further and additional relief to which Plaintiff, the Class, and the Plan may be justly entitled and the Court deems appropriate and just under all of the circumstances.

Respectfully submitted,

/s/ Timothy F. Maloney  _____
Timothy F. Maloney (Fed. Bar ID #03381)
Alyse L. Prawde (Fed. Bar ID #14676)
**Joseph Greenwald & Laake, PA**
6404 Ivy Lane, Suite 400
Greenbelt, Maryland  20770-1417
Telephone: (240) 553-1206
Facsimile: (240) 553-1737
Email: tmaloney@jgllaw.com
Email: aprawde@jgllaw.com

Ronald S. Kravitz*
**Shepherd, Finkelman, Miller & Shah, LLP**
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone: (415) 429-5272
Facsimile: (866) 300-7367
Email: rkravitz@sfmslaw.com

Kolin C. Tang*
**Shepherd, Finkelman, Miller & Shah, LLP**
1401 Dove Street, Suite 540
Newport Beach, CA 92660
Telephone: (323) 510-4060
Facsimile: (866)-300-7367
Email: ktang@sfmslaw.com

*Admission pro hac vice anticipated*

*Counsel for Plaintiff*

## NOTICE PURSUANT TO ERISA § 502(h)

To ensure compliance with the requirements of ERISA § 502(h), 29 U.S.C. § 1132(h), the undersigned hereby affirms that, on this date, a true and correct copy of this Complaint was served upon the Secretary of Labor and the Secretary of the Treasury by certified mail, return receipt requested.

Dated: April 28, 2020         Respectfully submitted,

**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**

/s/ Ronald S. Kravitz
One of the Attorneys for Plaintiff

Ronald S. Kravitz
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone: (415) 429-5272
Facsimile: (866) 300-7367
Email: rkravitz@sfmslaw.com