**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)**

| | |
|---|---|
| DAN FRANKENSTEIN, individually, and on behalf of all others similarly situated, and on behalf of the HMSHOST 401(k) RETIREMENT SAVINGS PLAN AND TRUST, | Case No.: 8:20-cv-01100-PJM |
| Plaintiff, | |
| v. | |
| HOST INTERNATIONAL, INC.; HMSHOST 401(k) RETIREMENT SAVINGS PLAN AND TRUST RETIREMENT COMMITTEE; COLEMAN LAUERBACH; and DOES NO. 1-10, Whose Names Are Currently Unknown, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**

BACKGROUND ............................................................................................................ 5

I.    The Parties .......................................................................................................... 5

II.   Host's Tips Policy and Relevant Payroll Practices .......................................... 6

III.  The Plan .............................................................................................................. 7

IV.   Administrative Claim History .......................................................................... 11

V.    Plaintiff's Complaint ........................................................................................ 13

LEGAL STANDARD ................................................................................................ 14

ARGUMENT .............................................................................................................. 15

I.    Plaintiff's Benefit Claim Fails as a Matter of Law Because Defendants Properly
      Construed the Plan's Terms .............................................................................. 15

  A.  Standard of Review for Benefit Claims ......................................................... 15

  B.  Defendants Did Not Abuse Their Discretion In Deciding Plaintiff's Benefit Claim . 16

    1.  The Parties Agree that Plaintiff's Reported Credit Card Tips Are Considered
        Compensation Under the Plan Terms ...................................................... 17

    2.  Defendants Correctly Applied the Plan's "Effectively Available Compensation"
        Limit to Plaintiff's Elected Deferral Rate ............................................... 18

II.   Plaintiff's Fiduciary Breach Claims Fail as a Matter of Law ........................ 20

  A.  Plaintiff's § 502(a)(3) Claim Must Be Dismissed
      as Duplicative of His Benefit Claim ............................................................. 20

  B.  Plaintiff Does Not Plausibly Allege A Fiduciary Breach Claim
      under §§ 502(a)(2) or 502(a)(3) .................................................................... 23

    1.  Defendants Did Not Administer the Plan Contrary to Its Terms ........... 23

    2.  There is No Cognizable Claim for Jeopardizing the Tax-Qualified Status of the
        Plan ........................................................................................................... 24

    3.  Host Does Not Act in its Fiduciary Capacity When Implementing Its Tip Policy . 26

    4.  Plaintiff Does Not Allege A Loss to the Plan to Support His § 502(a)(2) Claim ... 27

III.  Plaintiff Does Not Plausibly Allege an ERISA § 510 Claim ......................... 28

  A.  Plaintiff Does Not Allege an Adverse Action Protected by § 510 .............. 29

  B.  Plaintiff Does Not Allege That Host Acted with the Specific Intent to Discriminate
      Against Tipped Employees ............................................................................ 30

IV.   Dismissal of the Complaint with Prejudice Is Proper ................................... 30

CONCLUSION .......................................................................................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...................................................................................................15

*Beavers v. Am. Cast Iron Pipe Co.,*
  751 F. Supp. 956 (N.D. Ala. 1990), *rev'd on other grounds*, 975 F.2d 792
  (11th Cir. 1992)........................................................................................................26

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)...................................................................................................15

*Bennett v. Conrail Matched Sav. Plan Admin. Comm.,*
  Nos. 97-cv-4535, 97-cv-5017, 97-cv-5345, 1997 U.S. Dist. LEXIS 17295
  (E.D. Pa. Oct. 30, 1997)............................................................................................24

*In re Birmingham,*
  846 F.3d 88 (4th Cir. 2017) ......................................................................................14

*Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan,*
  201 F.3d 335 (4th Cir. 2000) ....................................................................................15

*CIGNA Corp. v. Amara,*
  563 U.S. 421 (2011)...................................................................................................20

*Conkwright v. Westinghouse Elec. Corp.,*
  933 F.2d 231 (4th Cir. 1991) ...............................................................3, 28, 29, 30

*Coomer v. Bethesda Hosp., Inc.,*
  370 F.3d 499 (6th Cir. 2004) ....................................................................................29

*Coyne & Delany Co. v. Blue Cross & Blue Shield of Va.,*
  102 F.3d 712 (4th Cir. 1996) ....................................................................................21

*Custer v. Pan Am. Life Ins. Co.,*
  12 F.3d 410 (4th Cir. 1993) .................................................................................3, 29

*Darcangelo v. Verizon Commc'ns Inc.,*
  292 F.3d 181 (4th Cir. 2002) ...............................................................................23, 26

*David v. Alphin,*
  704 F.3d 327 (4th Cir. 2013) ....................................................................................27

*Firestone Tire & Rubber Co. v. Bruch,*
  489 U.S. 101 (1989)...................................................................................................16

*Gamero v. Koodo Sushi Corp.*,
    272 F. Supp. 3d 481 (S.D.N.Y. 2017)............................................................................7

*George v. Duke Energy Ret. Cash Balance Plan*,
    560 F. Supp. 2d 444 (D.S.C. 2008)..............................................................21, 22, 23

*Griffin v. Hartford Life & Accident Ins. Co.*,
    898 F.3d 371 (4th Cir. 2018) ....................................................................................16

*Gross v. St. Agnes Health Care, Inc.*,
    No. 12-cv-2990-ELH, 2013 U.S. Dist. LEXIS 130291 (D. Md. Sep. 12, 2013)..............29, 30

*Hollowell v. Cincinnati Ventilating Co.*,
    711 F. Supp. 2d 751 (E.D. Ky. 2010) .....................................................................24, 25

*Jones v. Wilbert Burial Vault, Inc.*,
    No. 15-cv-3408, 2016 U.S. Dist. LEXIS 105675 (D.S.C. July 8, 2016).....................21, 22, 23

*Kearney v. Blue Cross & Blue Shield of N.C.*,
    376 F. Supp. 3d 618 (M.D.N.C. 2019) .....................................................................5

*Knepper v. Volvo Grp. N. Am.*,
    No. 18-02879, 2019 U.S. Dist. LEXIS 168037 (D. Md. Sep. 27, 2019)..............11, 15, 16, 24

*Korotynska v. Metro. Life Ins. Co.*,
    474 F.3d 101 (4th Cir. 2006) ....................................................................................21, 22

*Leach v. Aetna Life Ins. Co.*,
    No. 13-cv-2757, 2014 U.S. Dist. LEXIS 14086 (D. Md. Feb. 5, 2014)
    (Nickerson, J.)............................................................................................................21, 22, 23

*Little Wound Sch. v. Am. United Life Ins. Co.*,
    No. 17-cv-5017, 2018 U.S. Dist. LEXIS 35648 (D.S.D. Mar. 5, 2018)....................25

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996)..................................................................................................3, 20

*Malkani v. Clark Consulting, Inc.*,
    727 F. Supp. 2d 444 (D. Md. 2010), *aff'd*, No. 10-2008, 2011 U.S. App.
    LEXIS 15980 (Aug. 1, 2011)...................................................................................24, 25

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993)..................................................................................................3

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) ....................................................................................15

*Nix v. NASA Fed. Credit Union*,
    200 F. Supp. 3d 578 (D. Md. 2016) (Messitte, J.) ...................................................15

*Obazee v. Wells Fargo Advisors*, *LLC*,
    No. 10-cv-215, 2010 U.S. Dist. LEXIS 92107 (E.D. Va. Sep. 3, 2010) ...........................28, 30

*Pegram v. Herdich*,
    530 U.S. 211 (2000).........................................................................................26

*Pender v. Bank of Am.*,
    788 F.3d 354 (4th Cir. 2015) .............................................................................20

*Philips v. Pitt Cty. Mem'l Hosp.*,
    572 F.3d 176 (4th Cir. 2009) ...............................................................................5

*Prusin v. Canton's Pearls, LLC*,
    No. JKB-16-0605, 2017 U.S. Dist. LEXIS 183226 (D. Md. Nov. 6, 2017)
    (Bredar, J.) ....................................................................................................7

*Reklau v. Merch. Nat'l Corp.*,
    808 F.2d 628 (7th Cir. 1986) .............................................................................24

*Rivera v. Mo's Fisherman Exch., Inc.*,
    No. 15-cv-1427, 2018 U.S. Dist. LEXIS 72857 (D. Md. May 1, 2018)...............................6

*Shiqiu Chen v. H.B. Rest. Grp., Inc.*,
    No. 16-cv-2005, 2020 U.S. Dist. LEXIS 4269 (S.D.N.Y. Jan. 9, 2020) ...............................7

*Simmons v. Pilgrim*,
    No. 09-cv-121, 2010 U.S. Dist. LEXIS 120071 (N.D. Va. Nov. 10, 2010) .....................21, 22

*Soehnlen v. Fleet Owners Ins. Fund*,
    844 F.3d 576 (6th Cir. 2016) .............................................................................20

*Sposato v. First Mariner Bank*,
    No. 12-cv-1569-CCB, 2013 U.S. Dist. LEXIS 45806 (D. Md. Mar. 28, 2013)
    (Blake, J.) ....................................................................................................24

*Stamper v. Total Petroleum, Inc. Ret. Plan*,
    188 F.3d 1233 (10th Cir. 1999) ..........................................................................24

*Steele v. Leasing Enters.*,
    826 F.3d 237 (5th Cir. 2016) ...........................................................................7, 27

*Stiltner v. Beretta U.S.A. Corp.*,
    74 F.3d 1473 (4th Cir. 1996) (en banc) ................................................................29

*Tatum v. R.J. Reynolds Tobacco Co.*,
    No. 02-cv-00373, 2007 U.S. Dist. LEXIS 39801 (M.D.N.C. May 31, 2007) .......................23

*Townes Telecomms., Inc. v. Nat'l Telecomms. Coop. Ass'n*,
    No. 19-cv-436, 2020 U.S. Dist. LEXIS 21683 (E.D. Va. Feb. 7, 2020) .................................30

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996)...................................................................................................20, 21

*Wagner v. Econ. Rent-A-Car Corp.*,
    No. RDB-19-0180, 2020 U.S. Dist. LEXIS 36515 (D. Md. Mar. 3, 2020)
    (Bennett, J.)..............................................................................................................30

*Weigel v. Maryland*,
    950 F. Supp. 2d 811 (D. Md. 2013) (Quarles, J.) ...................................................30

*West v. Clarke Murphy, Jr. Self Employed Pension Plan*,
    99 F.3d 166 (4th Cir. 1996) ......................................................................................24

*Widjaja v. Kang Yue USA Corp.*,
    No. 09-CV-2089, 2011 U.S. Dist. LEXIS 109007 (E.D.N.Y. Sep. 26, 2011).........................7

**Statutes**

26 U.S.C. § 6053...............................................................................................6, 17, 18

29 U.S.C. § 1109(a), ERISA § 409(a) ...............................................................................27

29 U.S.C. § 1132(a), ERISA § 502(a) ...........................................................................1, 3

29 U.S.C. § 1132(a)(1)(B), ERISA § 502(a)(1)(B) ................................................. *passim*

29 U.S.C. § 1132(a)(2), ERISA § 502(a)(2) ......................................................... *passim*

29 U.S.C. § 1132(a)(3), ERISA § 502(a)(3) ......................................................... *passim*

29 U.S.C. § 1133, ERISA § 503 ........................................................................................10

29 U.S.C. § 1140, ERISA § 510 ...............................................................1, 14, 28, 29

**Rules**

Fed. R. Civ. P. 10(c) .......................................................................................................5

Fed. R. Civ. P. 12(b)(1)........................................................................................1, 14, 25

Fed. R. Civ. P. 12(b)(6)........................................................................................1, 14, 30

**Other Authorities**

CBS News, *Should you use your credit card to tip?*,
   https://www.cbsnews.com/news/should-you-use-your-credit-card-to-tip/ ...............................7

*Fact Sheet #15: Tipped Employees under the FLSA*, Dept. of Labor Wage and
   Hour Div., https://www.dol.gov/agencies/whd/fact-sheets/15-flsa-tipped-
   employees ..................................................................................................................6

*Fixing Common Plan Mistakes – Correcting a Failure to Effect Employee
   Deferral Elections*, https://www.irs.gov/retirement-plans/fixing-common-
   plan-mistakes-correcting-a-failure-to-effect-employee-deferral-elections.............................25

IRS Topic No. 761, *Tips – Withholding and Reporting*,
   www.irs.gov/taxtopics/tc761 .........................................................................6, 18, 19

IRS Rev. Pro. 2013-12,
   https://www.irs.gov/pub/irs-drop/rp-13-12.pdf ....................................................12

Defendants Host International Inc. ("Host"), the HMSHost 401(k) Retirement Savings Plan and Trust Retirement Committee ("Committee"), and Coleman Lauterbach[1] (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff's Class Action Complaint ("Complaint") with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).

Host has a corporate policy of paying credit card tips in cash to its tipped employees at the end of each shift. There is nothing illegal or unlawful about Defendants' policy. Not even Plaintiff claims as much. Yet, unhappy with the policy, Plaintiff sues under the Employee Retirement Income Security Act, 29 U.S.C §§ 1132(a) and 1140, ERISA §§ 502(a) and 510. Specifically, Plaintiff challenges the way Host's tipped employees' pre-tax deferral elections are administered under the HMSHost 401(k) Retirement Savings and Trust Plan ("Plan"). Drilled down to its essence, Plaintiff's only possible ERISA claim is a simple benefit claim challenging Defendants' interpretation of certain Plan terms, not a breach of fiduciary duty or a discrimination claim. And even that straightforward ERISA benefit claim fails because Defendants followed the terms of the Plan document. Plaintiff's real issue is with Host's corporate policy of paying credit card tips in cash at the end of each shift. But that policy is lawful under both federal and state law. Nowhere in the Complaint does Plaintiff challenge this policy as unlawful or improper, nor could he.

Host's tipped employees, including Plaintiff, are compensated through a combination of regular wages paid by Host and customer tips. Host pays regular wages through payroll; tips are received directly from customers in cash or, in the case of tips left on a credit card, paid by Host in cash at the end of each shift. Regular wages and tips are taxable income, and both are considered "Compensation" under the terms of the Plan for the purpose of calculating contributions to Plan.

---

[1] Mr. Lauterbach is incorrectly named in the Complaint as Coleman Lauerbach.

But, when taxes and benefit elections are withheld or deducted through Host's payroll, those deductions can be taken only from "effectively available Compensation," *i.e.*, the regular wages in employees' paychecks—not tips—for the simple reason that these tips are not in Host's possession. These tips were paid already in cash to employees at the end of each shift. The result is a common occurrence for tipped employees: their "effectively available Compensation" may be insufficient to effectuate their elected pre-tax employee deferral contributions to the Plan, and they must make the balance of their intended contributions through after-tax contributions if the plan document permits such contributions, as this Plan does.

An example may be helpful: for a two week pay period, assume that Plaintiff earned $500 in regular wages, received $500 in reported tips, has $200 in tax withholdings, and elected to defer 75% of his Compensation in to his 401(k) account. His Compensation for the two-week pay period would be $1,000 and his 401(k) deferral would be $750. However, since he received already $500 of his Compensation in tips (either paid in cash by the customer or, if a credit card tip, paid in cash by Host at the end of each shift), his paycheck includes $500 in regular wages only. Deduct from that amount $200 in taxes, which leaves only $300 to be deferred to Plaintiff's 401(k) account. The remaining $450 would have to be contributed after-tax if Plaintiff chose to do so. And, if otherwise eligible, Host would match Plaintiff's after-tax contribution up to Plan limits, just as it matches pre-tax deferrals.

Therein lies the problem according to Plaintiff. In the preceding example, were tips to be included in payroll with regular wages, Plaintiff would have had sufficient funds available to make the full $750 pre-tax deferral. Thus, Plaintiff contends that because the Plan's definition of Compensation includes reported tips, his tips must be made available for pre-tax deferrals to the Plan, even though these tips are not in Host's possession. Notably, Plaintiff does not allege that

the Plan or ERISA requires this: in fact, they do not. Plaintiff asserts that Defendants violate ERISA because he wants the ability to make pre-tax deferrals from tips that only he has control of. Plaintiff demands the Plan be designed to allow for this. ¶¶ 23-25. This claim simply misunderstands ERISA and no amendment of the Complaint will fix this defect.

It is axiomatic that ERISA does not require employers to offer retirement benefits or guarantee a certain level of benefits. *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). What ERISA does provide is a comprehensive and reticulated scheme of regulations and remedies governing benefit plans adopted voluntarily by employers. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993). As the Fourth Circuit has explained, ERISA §§ 502(a) and 510 work in concert to "protect a panoply of rights at risk in the pension context: rights [to benefits] about to be earned but frustrated due to unlawful employer action, benefits earned but not paid, other rights due a participant but not fulfilled, and future benefits earned but not yet due." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 421 (4th Cir. 1993) (citing *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 237 (4th Cir. 1991)). Notably absent from this list, however, is the right to obtain a benefit the employee wants that is not promised in the plan or protected by ERISA. And that is exactly what Plaintiff seeks here through a duplicative web of deficient claims on behalf of himself, the Plan, and a class of similarly situated employees.

First, Plaintiff asserts a claim for benefits under the Plan. This claim fails because, as Plaintiff concedes, nothing in the Plan requires tips to be made available for pre-tax deferrals.[2] In fact, the Plan language anticipates that regular wages may not be sufficient for all elected pre-tax

---

[2] And, Defendants are not aware of any state or federal authority requiring Host to make tip income available for pre-tax deferrals when Host no longer possesses these tips because they were paid in cash already to employees.

deferrals.  The Plan provides a solution for that issue—Arrears Contributions—and Defendants followed that procedure here.

Knowing his benefit claim fails, Plaintiff next attempts to improperly recharacterize the benefit claim as a breach of fiduciary duty based on a failure to follow Plan terms.  It is well-settled in the Fourth Circuit, however, that claims for equitable relief that duplicate a benefit claim must be dismissed.  Additionally, both fiduciary breach claims fail independently for a litany of reasons, including that there can be no fiduciary breach where fiduciaries follow Plan terms, there is no private right of action to redress violations of the Internal Revenue Code ("Code") (assuming it was violated, which it was not), Plaintiff challenges settlor rather than fiduciary functions, and Plaintiff does not plausibly allege a loss.

Finally, Plaintiff inexplicably argues that the Plan's terms discriminate against tipped employees in violation of ERISA § 510 by not allowing them to access the entirety of their Compensation for pre-tax deferrals.[3]  This claim is dead on arrival because § 510 only protects discrimination in the employment relationship that gives rise to benefit entitlement, not the design of the Plan.  In addition, the Complaint fails to allege plausibly that Defendants acted with specific intent to interfere with Plaintiff's right to benefits.

Because Defendants followed the Plan's terms and no other ERISA violation is cognizable, Plaintiff's claims must be dismissed as a matter of law with prejudice.  Dismissal with prejudice is appropriate here because no amendment of the Complaint will cure these defects.

---

[3] Again, this is an attack on the design of the payroll system, not an ERISA claim.  Plaintiff cannot use ERISA to attack Host's lawful payroll process.

# BACKGROUND

Except where otherwise indicated, this statement of facts is based on the allegations contained in Plaintiff's Complaint (Dkt. 1) and the documents attached to the Complaint and Defendants' Motion.[4] The material facts alleged in the Complaint are not in dispute making this motion ripe for resolution as a matter of law.

## I.     The Parties

Host is a restaurateur that creates and provides innovative dining for air travelers, motorists, and other consumers in multiple venues.  ¶ 5.  Host is both the Plan Sponsor and the Plan Administrator.  *See* ¶ 5; Summary Plan Description ("SPD") §§ II(E), (K), & (N); AA § 1.01(c).[5] The Committee consists of Host executives who are responsible for managing the Plan Administrator, Plan design, and Plan administration.[6] *See* ¶ 6; SPD §§ II(K), XI(A)(2).

Plaintiff Dan Frankenstein is a current employee of Host and a participant in the Plan.  ¶ 4. Plaintiff is a tipped employee. ¶¶ 4, 14.

---

[4] The Court "may consider documents attached to the complaint, … as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic."  *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (internal citation omitted); Fed. R. Civ. P. 10(c) ("a copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes").

[5] The Plan is governed by two documents:  a "volume submitter" plan document which is standardized instrument created by Fidelity (Dkt. 1-2) and an Adoption Agreement (Dkt. 1-3) that provides individualized provisions for the Plan and is incorporated in the volume submitter document by reference.  ¶ 12, n 2.  Citations to "VS" are to the standardized volume submitter document and citations to "AA" are to the Adoption Agreement.  These Plan Documents and the SPD (Dkt. 1-4) are attached to Plaintiff's Complaint and may be considered by the Court.  *See supra* Note 1; *Kearney v. Blue Cross & Blue Shield of N.C.*, 376 F. Supp. 3d 618, 623 (M.D.N.C. 2019).

[6] Defendant Lauterbach is a member of the Committee.  ¶ 2.  Plaintiff also asserts claims against Doe defendants who are the remaining Committee members.  *Id.*

## II.    Host's Tips Policy and Relevant Payroll Practices

Tipped employees are compensated through a combination of regular wages and customer tips. Host pays regular wages, *i.e.* hourly pay, through its payroll system. *See* Exhibit ("Ex.") A at A-9, April 10, 2019 Denial Letter.[7] As is common in the hospitality industry, tips are not paid through payroll. ¶ 16. The employee "pockets" cash tips received directly from customers (which are ignored in the Complaint). For tips charged on a credit card, Host pays these charged tips in cash to the tipped employee at the end of each shift.[8] ¶¶ 14-15. After the end of each month, tipped employees are required by Host policies and the Code to report the amount of tips received (including credit card tips) to Host so that Host can report these tips to the IRS and process appropriate withholdings. *See* 26 U.S.C. § 6053; *see also* IRS Pub. 1244 (including the Form 4070 used to report tips); IRS Topic No. 761, *Tips – Withholding and Reporting*, www.irs.gov/taxtopics/tc761.

All reported tips, both cash and credit card, are combined with regular wages as taxable earnings, as is required by law. ¶¶ 15, 20; *see also* IRS Topic No. 761, *Tips – Withholding and Reporting*, www.irs.gov/taxtopics/tc761. However, because employees "pocket" all of their tips after each shift, only regular wages are paid through Host's payroll system. *See* ¶¶ 18, 20, 21. Said another way, all tips are retained by or paid to the employee after every shift in cash and thus

---

[7] All exhibits are attached to the accompanying Declaration of Lindsey Chopin.

[8] Even though entitled to do so, Host does not deduct processing fees from employee credit card tips when converting them to cash. *See Fact Sheet #15: Tipped Employees under the FLSA*, Dept. of Labor Wage and Hour Div., https://www.dol.gov/agencies/whd/fact-sheets/15-flsa-tipped-employees; *see also Rivera v. Mo's Fisherman Exch., Inc.*, No. 15-cv-1427, 2018 U.S. Dist. LEXIS 72857, at *43 (D. Md. May 1, 2018) (holding that it is clear that employers may deduct credit card processing fees). By absorbing these administrative costs, Host provides Plaintiff and other tipped employees with greater take-home pay thereby leaving more funds available for after-tax Arrears Contributions to the 401(k) Plan if the employee opts to make such contributions. *See infra* pp. 8-9.

are not in Host's possession and cannot be paid through payroll. Required taxes and other withholdings, as well as payroll deductions for elected employee benefits, such as 401(k) contributions, health insurance and other benefits that are deducted through the payroll system are therefore deducted only from regular wages. ¶¶ 15, 20-21, 25.

Plaintiff does not claim that Host's payroll practices or tip policies are improper or violate any state or federal law. Nor could he. Paying credit card tips in cash on a daily basis is a well-accepted and common practice. *See Prusin v. Canton's Pearls, LLC*, No. JKB-16-0605, 2017 U.S. Dist. LEXIS 183226, at *3 (D. Md. Nov. 6, 2017) (Bredar, J.) (describing similar payroll practice without any indication that the policies were illegal or uncommon); *Steele v. Leasing Enters.*, 826 F.3d 237, 241 (5th Cir. 2016) (same); *Shiqiu Chen v. H.B. Rest. Grp., Inc.*, No. 16-cv-2005, 2020 U.S. Dist. LEXIS 4269, at *12 (S.D.N.Y. Jan. 9, 2020) (same); *Widjaja v. Kang Yue USA Corp.*, No. 09-CV-2089, 2011 U.S. Dist. LEXIS 109007, at *4-5 (E.D.N.Y. Sep. 26, 2011) (same); *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 490 (S.D.N.Y. 2017) (same). In fact, it is the preferred practice because it increases the daily cash flow for tipped employees. *See*, *e.g.*, *Steele*, 826 F.3d at 241 (observing that servers requested that credit card tips be paid daily in cash); *see also* CBS News, *Should you use your credit card to tip?*, https://www.cbsnews.com/news/should-you-use-your-credit-card-to-tip/ (paying credit card tips through payroll causes cash flow problems for tipped employees).

## III.    The Plan

Host sponsors the tax-qualified Plan for eligible employees to save for retirement. *See* ¶ 2, SPD §§ I, II(N). The Plan is a defined contribution, individual account 401(k) retirement plan with over $300 million in assets and 21,000 total participants. ¶ 2; AA § 1.01(b); SPD §§ I, II(J). The Plan is a Fidelity Investments volume submitter plan, pre-approved by the IRS. ¶ 12.

*Plan Contributions*.  Contributions are made to the Plan through employee pre-tax deferral contributions (which are the main subject of the Complaint), employee after-tax contributions (such as Arrears Contributions), and employer matching contributions.[9]  SPD § IV.  Participants are immediately 100% vested in all contributions.  VS § 5.11(a); SPD § IV(I).

### i.      Employee Pre-Tax Deferral Contributions

Host makes pre-tax deferral contributions to the Plan in accordance with a participant's salary reduction agreement.  Under these agreements, a participant elects to defer a portion of his "Compensation" as defined for purposes of the Plan to his individual 401(k) account.  VS §§ 2.01(m), 5.03.   Plan § 5.03, in conjunction with § 1.07, permits regular, pre-tax contributions at a rate of up to 75% of the participant's "Compensation," as defined in the Plan.  ¶ 12; AA § 1.07; VS § 5.03; SPD § IV(B)(1).  The deferral rate is at the employee's discretion so long as it is less than 75%, in increments of 1%, and does not conflict with the Code's provisions.  AA § 1.07(a)(1)(A); VS § 5.03; SPD § IV(B)(1).  Participants who are age 50 or older by the end of the year and have made the maximum pre-tax deferral may be eligible to make additional, pre-tax catch-up contributions, up to the limits imposed by the Code.  AA § 1.07(a)(4); VS § 5.03(a); SPD § IV(B)(2).  Pre-tax contributions are completely voluntary.

### ii.      After-Tax Contributions

Participants also may make after-tax contributions to the Plan, within certain limits.  AA § 1.08; § VS 5.04; SPD § IV(C).  Arrears Contributions are a type of after-tax contribution permitted under the Plan.  SPD § IV(D).  The SPD specifically explains that Arrears Contributions are permitted when a participant's paycheck is not sufficient to contribute the full pre-tax deferral

---

[9] Rollover contributions and qualified nonelective contributions may also be made but are not implicated in this case.  AA §§ 1.09, 1.10; VS §§ 5.06, 5.07; SPD §§ IV(E)(3), (G).

that the participant elected.  *Id.*  For example, using the hypothetical from the introduction, if Plaintiff elected to make a $750 pre-tax deferral to his 401(k) account, but had only $300 remaining in his regular paycheck to make such a deferral, Plaintiff would be eligible to contribute the remaining $450 as an after-tax Arrears Contribution.  Because these are after-tax contributions, a participant is not taxed on the distribution of these contributions from the Plan as they would be for pre-tax contributions and earnings thereon.  *Id.*  When a Plan participant is eligible to make an Arrears Contribution, the Plan sends periodic statements disclosing what amount is eligible for such a contribution, how and when that contribution can be made, and how it will be taxed.  *Id.*  Plaintiff does not allege that he made any Arrears Contributions even though he could have.

### iii.    Employer Matching Contributions

When a Plan participant makes pre- or after-tax contributions (including Arrears Contributions) to the Plan, Host makes an employer matching contribution to the participant's Plan account.  Matching contributions are generally equal to 100% of the first 3% of eligible Compensation and 50% of the next 3% of eligible Compensation for a maximum total of 4.5% of Compensation where the employee contributes 6% to the plan, subject to limitations imposed by the Code.  AA § 1.11(a)(3); VS § 5.08; SPD §§ IV(E)-(F).  Plaintiff admits that in 2018 he contributed 11.5% of his Compensation through pre-tax deferrals, *see* Ex. A at A-3, May 20, 2019 Claim Letter; therefore, he received 100% of all eligible employer matching contributions in 2018.

*Compensation***.**  For the purposes of calculating the contributions discussed above, Compensation is defined in the Plan as:

> wages as defined in [Internal Revenue] Code Section 3401(a) (for purposes of income tax withholding at the source) plus amounts that would be included in wages but for an election under [Internal Revenue] Code Section 125(a), 132(f)(4), 402(e)(3), 402(h)(1)(B), 402(k), or 457(b) and all other payments of compensation to an Eligible Employee by the Employer (in the course of the Employer's trade or business) for services to the Employer while employed as an Eligible Employee for which the Employer is required to furnish the Eligible Employee a written statement under Code Sections 6041(d), 6051(a)(3) and 6052.

VS § 2.01(k).  In simpler terms, Compensation is "the taxable compensation for a Plan Year reportable by your Employer on your IRS Form W-2" with some exclusions not at issue here. SPD IV.A; AA § 1.07; VS §§ 2.01(k) 5.02.[10]

Critically, the Plan recognizes that the Compensation to which a Participant's elected deferral applies does not always equal the amount available operationally to effect such a deferral, and there may be a shortfall:

> Notwithstanding any other provision of this Section [5.03] or any Participants' salary reduction agreement, in no event shall a Participant be permitted to make Deferral Contributions in excess of his "effectively available Compensation."  A Participant's "effectively available Compensation" is his Compensation remaining after all applicable amounts have been withheld (*e.g.* tax-withholding and withholding of contributions to a cafeteria plan).

VS § 5.03.  The SPD explains in further detail how the inclusion of reported tips in the definition of Compensation and the "effectively available Compensation" limit provided in § 5.03 may affect tipped employees:

> Tipped employee contributions to the Plan *include all reported gratuities as eligible compensation when determining the eligible contribution amount for the Plan*.  Consequently, tipped employees may receive a payroll check that is not sufficient for taking a deduction, which may result in an Arrears Contribution (calculated deductions not taken from the payroll check).

SPD § IV(D) (emphasis added).

***Administrative Claims Procedure*.**  Pursuant to 29 U.S.C. § 1133, ERISA § 503, participants and beneficiaries are entitled to make claims for benefits under the Plan's claim review process and to appeal benefit denials.  SPD § XI(A); VS § 19.03.  As Plan administrator, Host has:

---

[10] These exclusions include "reimbursements or other expense allowances, fringe benefits, moving expenses, deferred compensation, long term incentive payments, any payments made to an Employee performing Qualified Military Service in lieu of wages the individual would have received from the Employer if the individual were performing service for the Employer, and welfare benefits."  SPD § IV(A); Additional Provisions Addendum to the AA § (a)(1)(a).

> all such powers and authorities as may be necessary to carry out the provisions of
> the Plan, including the discretionary power and authority to interpret and construe
> the provisions of the Plan, such interpretation to be final and conclusive on all
> persons claiming benefits under the Plan; to make benefit determinations . . . and
> to resolve any disputes arising under the Plan.

Plan § 19.01. Pursuant to its power to delegate its administrative authority, *id.*, Host has delegated

its authority to resolve benefit claims to the Claims Administrator and its authority to review

appeals of claim denials to the Committee. SPD §§ XI(A)(1)-(2). The Plan's claim review

procedures are set forth in detail in the Summary Plan Description. *Id.*; VS § 19.03.

## IV.    Administrative Claim History

The parties do not dispute that Plaintiff exhausted the Plan's claims procedure. The

correspondence related to Plaintiff's claim and appeal is attached hereto as Exhibits A & B.[11]

In his initial correspondence from around March 7, 2019, Plaintiff stated that he did not

have sufficient funds in his paychecks to fund the 25% pre-tax deferral rate[12] he elected under the

Plan because credit card tips are considered Compensation under the Plan but paid out daily in

cash, such that they are not processed through the payroll system and made available for pre-tax

employee deferrals. *See* ¶ 17; Ex. A at A-05, Letter from Dan Frankenstein to Mandy Taggart.

He also stated that this method of paying tips kept him from making catch-up contributions. *Id.*

In a letter dated March 11, 2019, Host's Senior Manager of Defined Contribution Plans

responded to Mr. Frankenstein's letter and provided an overview of how employee deferrals are

---

[11] The Court can consider the claims letters attached to Defendants' Motion because they are
incorporated by reference in Plaintiff's Complaint (*see* ¶¶ 17-26) and are integral to his claims.
*See supra* Note 1; *Knepper v. Volvo Grp. N. Am.*, No. 18-02879, 2019 U.S. Dist. LEXIS 168037,
at *21 (D. Md. Sep. 27, 2019) (considering benefits determination letters attached to motion to
dismiss).

[12] During the claims review process, Plaintiff amended his election to defer 75% of his
Compensation. *See* Ex. A at A-05, Letter from Dan Frankenstein to Mandy Taggart.

administered under the Plan.  *See* ¶ 18; Ex. A at A-06, Letter from Regina Dowdy to Dan

Frankenstein.  Ms. Dowdy explained that tipped employees often do not have sufficient funds

processed through payroll to fund their elections because their tips are paid in cash, that the SPD

explains how deferrals for tipped employees may differ, and that Host implemented an "Arrears"

function in the payroll system to track the amounts that would have been deferred if sufficient

funds existed so that those funds could be contributed after-tax.  *Id.*  Ms. Dowdy also explained

that the situation Plaintiff described is not a "missed deferral," as missed deferrals do not apply to

the situation here where there are insufficient funds to process the full elected deferral amounts.

*Id.* at A-07.  Host also provided Plaintiff with copies of the operative Plan documents.  *See* Ex. A

at A-08, Letter from Dan Frankenstein to Regina Dowdy.

      Plaintiff sent a follow-up letter to Ms. Dowdy on March 17, 2019 inquiring further as to

how the Plan provisions summarized in her March 11 letter applied to the deferral of his credit

card tips and insisting that this is a "missed deferral" that can be corrected through the IRS's

voluntary correction program.[13]  *Id*; ¶ 19.  Plaintiff asserted that "[w]hether Host pays me in cash,

check, or direct deposit shall not affect my ability to defer Compensation into the Plan."  *See* Ex.

A at A-08.

      The Plan's Claims Administrator responded by letter on April 10, 2019 explaining that Host

construed Plaintiff's March 17 inquiry as a claim for benefits.  *See* ¶¶ 20-21; Ex. A at A-09, April

10, 2019 Letter from Carol Russell to Dan Frankenstein.  The Claims Administrator denied the

claim, incorporating the explanations in the March 11 letter to Plaintiff and further explaining how

---

[13]  Plaintiff pointed to the now-outdated IRS Revenue Procedure 2013-12 that outlines the
correction programs available to retirement plan sponsors, including an example of an accepted
voluntary correction method for missed deferrals.  IRS Rev. Pro. 2013-12 at Appendix A §
.05(5)(a), https://www.irs.gov/pub/irs-drop/rp-13-12.pdf.  Plaintiff appears to abandon his
"missed deferral" argument in the Complaint.

tax requirements and payroll procedures impact the amount of funds "effectively available" for deferrals. *Id.*

Plaintiff appealed the denial to the Retirement Committee and Plan Administrator on May 20, 2019, again insisting that the issues he raised were operational issues (missed deferrals) that can and should be corrected to avoid Plan disqualification. ¶ 24; Ex. A at A-03, May 20, 2019 Letter from Dan Frankenstein to Plan Administrator and Committee. The appeal was denied on June 7, 2019. ¶ 25; Ex. B, June 7, 2019 Letter from Coleman Lauterbach to Dan Frankenstein. The denial emphasized that Host "*cannot,* under the terms of the Plan and federal tax law, make your elected pre-tax deferrals of tip Compensation out of anything *other than* your regular wages paid through payroll that remain after taking deductions for all required tax withholdings and other authorized deductions from your pay." *Id.* at 2. The appeal denial stated that Plaintiff had 12 months to file suit challenging the denial. *Id.* at 3.

## V.    Plaintiff's Complaint

Plaintiff filed his Complaint on April 28, 2020 on behalf of himself, the Plan, and a putative class consisting of all current and former participants of the Plan "who received reported tips as compensation and had a deferral election in place at the time they received the reported tips within six years of" April 28, 2020. *See* ¶ 28. Based on this and the factual allegations summarized above, Plaintiff asserts four claims against Defendants.

In Count I, Plaintiff seeks to enforce his rights under the Plan to recover benefits allegedly owed to him pursuant 29 U.S.C. § 1132(a)(1)(B), ERISA § 502(a)(1)(B) (the "Benefit Claim"). *See* ¶ 39. Specifically, Plaintiff claims that the Plan gives participants the right to defer a portion of their reported tips to their individual 401(k) accounts and receive benefits based on those

contributions and that Defendants violated the Plan by preventing Plaintiff and the putative class members from doing so.  *See* ¶¶ 40-41.

In Count II, Plaintiff seeks plan-wide relief for losses to the Plan, pursuant to 29 U.S.C. § 1132(a)(2), ERISA § 502(a)(2), based on the allegation that Defendants breached their fiduciary duties by acting contrary to Plan terms and "potentially jeopardizing the tax-qualified status of the Plan" (the "502(a)(2) Claim").  *See* ¶¶ 47-51, 53.

Count III seeks equitable relief, including but not limited to a declaratory judgment that Defendants acted contrary to Plan terms and an injunction preventing Defendants from interpreting the Plan as they have, pursuant to 29 U.S.C. § 1132(a)(3), ERISA § 502(a)(3) (the "502(a)(3) Claim").  This claim, like Count II, is based on the allegation that Defendants breached their fiduciary duties by not following the Plan's terms, thereby jeopardizing the Plan's tax-qualified status.

In each Count, Plaintiff also repeats a claim under 29 U.S.C. § 1140, ERISA § 510 alleging that Defendants discriminated against Plaintiff and other Plan participants and interfered with their rights under ERISA by allowing highly compensated/non-tipped employees to apply pre-tax deferrals to the entirety of their reported income but precluding tipped employees from doing the same (the "510 Claim").  *See* ¶¶ 42, 52, 59.

Defendants now move to dismiss these claims with prejudice pursuant to Federal Rule of Civil Procedure 12(b) for the reasons set forth herein.

## **LEGAL STANDARD**

A motion pursuant to Rule 12(b)(6) is the proper vehicle to test the legal sufficiency of Plaintiff's Complaint.  *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017).  To survive a Rule 12(b)(6) motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right

to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009).  The ordinary rule that "a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. 544, 555).  Courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*; *Nemet Chevrolet, Ltd.*, 591 F.3d at 255; *Nix v. NASA Fed. Credit Union*, 200 F. Supp. 3d 578, 586 (D. Md. 2016) (Messitte, J.).

## ARGUMENT

### I.   Plaintiff's Benefit Claim Fails as a Matter of Law Because Defendants Properly Construed the Plan's Terms

Plaintiff's Benefit Claim asserts that "Plaintiff and the Class were (and are) entitled to contribute a portion of their reported tips based on their deferral elections" and that Defendants violated the Plan by preventing them from doing so.  ¶¶ 40-42.  This claim must be dismissed as it ignores the Plan and SPD language defining the "effectively available Compensation" limit on pre-tax employee contributions.

### A.   Standard of Review for Benefit Claims

Following a final adverse benefit determination at the administrative level, ERISA § 502(a)(1)(B) permits a plan participant to file suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  Where the operative ERISA plan grants the plan administrator discretionary authority to determine eligibility for benefits or construe plan terms, the Court reviews the adverse benefit determination for an abuse of discretion. *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342 (4th Cir. 2000); *Knepper*, 2019 U.S. Dist.

LEXIS 168037, at *29.[14]

Here, the Plan grants such discretionary authority, *see* Plan § 19.01, so the abuse of discretion standard applies. Defendants' task at the motion to dismiss stage, therefore, is to show that Plaintiff has failed to plausibly allege that Defendants abused their discretion in denying benefits. *See Knepper*, 2019 U.S. Dist. LEXIS 168037, at * 34. Where the dispute is based purely on a legal interpretation of plan terms, and where the Court determines the plan interpretation is reasonable, the benefit claim should be dismissed at the pleadings stage. *See id.* at *40 (applying general contract principles to plan terms to dismiss plaintiff's retirement benefit claim).

### B.    Defendants Did Not Abuse Their Discretion In Deciding Plaintiff's Benefit Claim

In the administrative process, Plaintiff claimed that Defendants failed to defer the entire amount of his elected pre-tax deferral of Compensation to his 401(k) account and requested that the Plan make additional contributions to his Plan account to make up for the missed deferrals.[15] Defendants denied the claim because the Plan only permits pre-tax employee deferrals from "effectively available Compensation."   Plaintiff's effectively available Compensation was insufficient to cover his elected deferral rate of 25%, and later 75%, of his Compensation because he "pocketed" his cash tips at the end of each shift, making his tips unavailable for pre-tax deferrals from his paycheck.  Defendants did not abuse their discretion in reaching this conclusion; their

---

[14] If discretion is not granted, the default *de novo* standard of review applies. *See Griffin v. Hartford Life & Accident Ins. Co.*, 898 F.3d 371, 378 (4th Cir. 2018) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  The *de novo* standard is not relevant here because the Plan properly grants discretion to the Plan Administrator.

[15] Plaintiff's theory is a classic "double-dip."  He has received his credit card tips paid in cash. Those tips are not part of his effectively available Compensation because after each shift, he kept those tips.  Nevertheless, he argues that on his behalf, Host should contribute to the Plan the tipped amounts he pocketed already.  This constitutes a windfall by essentially doubling his tips at Host's and the Plan's expense.

analysis was entirely reasonable and complied with the Plan terms.  This claim must be dismissed with prejudice.

### 1. The Parties Agree that Plaintiff's Reported Credit Card Tips Are Considered Compensation Under the Plan Terms

Defendants correctly determined that the Plan's definition of "Compensation" includes reported credit card tips.  Exs. A & B.  The Plan defines "Compensation" for the purposes of calculating employee deferrals as:

> wages as defined in [Internal Revenue] Code Section 3401(a) (for purposes of income tax withholding at the source) plus amounts that would be included in wages but for an election under [Internal Revenue] Code Section 125(a), 132(f)(4), 402(e)(3), 402(h)(1)(B), 402(k), or 457(b) and all other payments of compensation to an Eligible Employee by the Employer (in the course of the Employer's trade or business) for services to the Employer while employed as an Eligible Employee for which the Employer is required to furnish the Eligible Employee a written statement under Code Sections 6041(d), 6051(a)(3) and 6052.

VS § 2.01(k).  Code § 3401(f) expressly states that the term wages as defined in § 3401(a) includes tips, *see also* ¶ 13, and Code § 3402(k) clearly states that an employer may only include those tips reported under Code § 6053 as wages subject to federal income tax withholding requirements.

The SPD explains, in simpler terms, that Compensation includes "the taxable compensation for a Plan Year reportable by your Employer on your IRS Form W-2" with some exclusions not at issue here.  *See* SPD IV(A).  All reported tips, both cash and credit card, are included as wages on employee W-2s; thus, reported credit card tips are properly considered Compensation.[16]  Plaintiff does not dispute this.  *See* ¶ 22 ("'reported tips' are 'eligible compensation'").[17]  Plaintiff therefore cannot plausibly allege that Defendants abused their discretion by reaching the same conclusion.

---

[16] Cash tips that are reported in accordance with the law and Host's employment policies are also included as Compensation, but Plaintiff does not mention this in his Complaint.

[17] Citing the initial claim denial letter, Plaintiff alleges that the Claims Administrator found that credit card tips are not reported tips.  ¶ 21.  This is not correct.  The denial letter explained that only reported tips are considered Compensation under the Plan, and then further explained

### 2.  Defendants Correctly Applied the Plan's "Effectively Available Compensation" Limit to Plaintiff's Elected Deferral Rate

Defendants correctly determined that Plaintiff's elected pre-tax deferral rate exceeded his effectively available Compensation and was properly reduced in accordance with that limit.

While § 5.03 of the Plan permits participants to make pre-tax employee contributions of up to 75% of their Compensation to their individual 401(k) account, it also explains that:

> Notwithstanding any other provision of this Section [5.03] or any Participants' salary reduction agreement, in no event shall a Participant be permitted to make Deferral Contributions in excess of his "effectively available Compensation." A Participant's 'effectively available Compensation' is his Compensation remaining after all applicable amounts have been withheld (*e.g.* tax-withholding and withholding of contributions to a cafeteria plan).

VS § 5.03, *see also* AA § 1.07(a). Again, the SPD provides further detail in layman's terms. Specifically, it explains that because the Plan's definition of Compensation includes reported tips, tipped employees may have a shortfall in their regular wages when making pre-tax contributions:

> Tipped employee contributions to the Plan include all reported gratuities as eligible compensation when determining the eligible contribution amount for the Plan. Consequently, tipped employees may receive a payroll check that is not sufficient for taking a deduction, which may result in an Arrears Contribution (calculated deductions not taken from the payroll check).

SPD § IV(D).

Applying these Plan terms, Defendants concluded that "even though reported tips are

---

that the fact credit card tips are electronically recorded in the point of sale system does not make them "reported" for the purposes of federal tax law. Ex. Ex A at A-9, ¶ 2, April 10, 2019 Denial Letter. Rather, the employee must report credit card tips to Host and it is that act of reporting that renders the tips "reported." *Id.*; 26 U.S.C. § 6053; *see also* IRS Topic No. 761, *Tips – Withholding and Reporting*, www.irs.gov/taxtopics/tc761. Host cannot consider tips recorded in the point of sale system as "reported" unless they are reported by employees through the proper channels for a number of a reasons, not the least of which being that the Code requires reporting through the employee as proscribed in Code § 6053. In addition, due to tip sharing agreements and possible underreporting of tips by employees, the gross tip amount that the credit card point of sale systems records and the actual net tips reported to Host and subsequently to the IRS and used to calculate withholdings, are not always equal.

included in Compensation for the purposes of determining the overall amount of deferrals/contributions to the Plan, 'counting' tips as Compensation does not mean that tip amounts are effectively available to withhold deferrals from" leading to the shortfall at the center of Plaintiff's claims here. Ex. A at A-10 & Ex. B; ¶¶ 21, 25. The rationale behind the effectively available Compensation limit is simple: if the tips have been paid to the employees at the end of the shift in cash, that money is not in the participant's paycheck and it cannot be taken from the paycheck as part of the pre-tax deferral.[18] This is a reasonable interpretation of the Plan terms and should not be disturbed by the Court.

Plaintiff does not dispute that Defendant's interpretation is correct, and Plaintiff's Complaint does not contradict Defendants' interpretation of the Plan terms. Nowhere in the Complaint does he offer a different reading of the relevant Plan terms. Instead, Plaintiff attacks Host's corporate payroll policy of paying credit card tips in cash[19] and argues that nothing in the state or federal law or the Plan stops Defendants from adopting "a separate mechanism to allow Plan participants to defer their reported credit card tips according to their elections." ¶¶ 22-23. Of course, nothing in state or federal law requires Defendants to revise their payroll practices as Plaintiff prefers.

Moreover, Host's tip policy is both lawful and common in the industry (*see supra* p. 7), and Plaintiff does not dispute that. Even accepting as true that different payroll mechanisms exist,

---

[18] The shortfall that occurs is not a Plan-specific issue. The IRS recognizes that regular wages paid through payroll may not even be sufficient to satisfy required tax withholdings and has a hierarchy for what withholdings should be paid first. *See* IRS Topic No. 761, *Tips – Withholding and Reporting*, www.irs.gov/taxtopics/tc761 (outlining for employers which amounts should be withheld first in the event of a shortfall in regular wages).

[19] Plaintiff never alleges that these policies are illegal because these policies are legal. Even if Plaintiff could challenge Host's system, payroll practices and employment policies are beyond ERISA's scope.

Plaintiff's contention that the Plan could operate differently if Defendants adopted different corporate payroll policies goes beyond ERISA's scope and fails to support Plaintiff's Benefit Claim. ERISA § 502(a)(1)(B) provides an avenue for Plaintiff to recover benefits due under the Plan or to enforce or clarify his rights under the Plan. It does not allow Plaintiff to redesign the Plan or the employer's payroll practices. *See*, *e.g.*, *Pender v. Bank of Am.*, 788 F.3d 354, 361-62 (4th Cir. 2015) (§ 502(a)(1)(B) "speaks of enforcing the terms of the plan, not of changing them") (citing *CIGNA Corp. v. Amara*, 563 U.S. 421, 435-36 (2011)); *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 583 n.2 (6th Cir. 2016); *see also*, *Lockheed Corp.*, 517 U.S. at 887 ("ERISA [does not] mandate what kind of benefit employers must provide if  they choose to have such a plan").

Since the sole focus of the Benefit Claim is on whether the Plan terms were followed, and the Plan terms were followed here, Plaintiff does not state a claim for benefits.

**II.      Plaintiff's Fiduciary Breach Claims Fail as a Matter of Law**

Plaintiff's § 502(a)(3) Claim fails as a matter of law because it is duplicative of his § 502(a)(1)(B) claim. Assuming, however, that the § 502(a)(3) Claim can survive, both it and Plaintiff's § 502(a)(2) Claim must be dismissed because Plaintiff fails to allege any facts giving rise to a plausible claim.

**A.      Plaintiff's § 502(a)(3) Claim Must Be Dismissed as Duplicative of His Benefit Claim**

ERISA provides a specific and limited remedy for plan participants to recover individual benefits that allegedly have been wrongfully denied under an ERISA plan or to clarify their rights under an ERISA Plan:  § 502(a)(1)(B). Section 502(a)(3), on the other hand, is a "catch all" provision designed to offer "appropriate equitable relief" for certain fiduciary breaches that cannot be redressed under another remedy provision. *See Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996) (§ 502(a)(3) "act[s] as a safety net, offering appropriate equitable relief for injuries caused by

violations that § 502 does not elsewhere adequately remedy."). Accordingly, relief under § 502(a)(3) is not available where Plaintiff can seek relief under § 502(a)(1)(B), *Varity*, 516 U.S. at 515, and it is not appropriate to plead such claims in the alternative. *Id.* at 514 (noting that "lawyers will complicate ordinary benefit claims by dressing them up in 'fiduciary duty' clothing," and relabeling such a claim as a fiduciary breach will not suffice to justify a separate claim under § 502(a)(3)).

The Fourth Circuit has consistently recognized that ERISA precludes such duplicative claims for relief. *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101 (4th Cir. 2006) (explaining that "where a plaintiff can obtain complete relief under Section 502(a)(1)(B), he cannot simultaneously bring a claim under Section 502(a)(3)"); *Coyne & Delany Co. v. Blue Cross & Blue Shield of Va.*, 102 F.3d 712, 714 (4th Cir. 1996); *Jones v. Wilbert Burial Vault, Inc.*, No. 15-cv-3408, 2016 U.S. Dist. LEXIS 105675, at *16 (D.S.C. July 8, 2016) (finding that a § 502(a)(3) claim alleging that a plan fiduciary misinterpreted plan terms must be construed as a benefit claim under § 502(a)(1)(B)); *Leach v. Aetna Life Ins. Co.*, No. 13-cv-2757, 2014 U.S. Dist. LEXIS 14086, at **10-15 (D. Md. Feb. 5, 2014) (Nickerson, J.); *Simmons v. Pilgrim*, No. 09-cv-121, 2010 U.S. Dist. LEXIS 120071, at **13-17 (N.D. Va. Nov. 10, 2010) (stating that breach of fiduciary duty claims challenging plan interpretation are benefit claims in disguise); *George v. Duke Energy Ret. Cash Balance Plan*, 560 F. Supp. 2d 444, 476-77 (D.S.C. 2008). As the Fourth Circuit explained in *Coyne*, allowing a dressed-up benefit claim "to proceed as a breach of fiduciary duty action would encourage parties to avoid the implications of section 502(a)(1)(B) by artful pleading; indeed every wrongful denial of benefits could be characterized as a breach of fiduciary duty." *Coyne & Delany Co.*, 102 F.3d at 714.

Accordingly, courts must analyze whether a § 502(a)(3) claim is "brought to remedy the same harm or injury for which relief is sought in [p]laintiff's claim for denial of benefits" under § 502(a)(1)(B). *Leach*, 2014 U.S. Dist. LEXIS 14086, at *14. A claim that challenges a denial of benefits in the administrative process and seeks redress for the financial harm suffered as a result of that denial is "unquestionably a benefit claim." *Korotynska*, 474 F.3d at 105; *Leach*, 2014 U.S. Dist. LEXIS 14086, at **10-15. And claims that challenge the interpretation of the Plan's terms are also benefit claims. *Jones*, 2016 U.S. Dist. LEXIS 105675, at *16; *Simmons*, 2010 U.S. Dist. LEXIS 120071, at **13-17. In *George*, for example, the court applied *Korotynska* to dismiss fiduciary breach claims on the pleadings where the plaintiffs argued that defendants failed to include commissions as compensation when calculating their retirement account balance because a claim challenging plan interpretation is properly asserted as a benefit claim. 560 F. Supp. 2d at 476-77. Similarly, in *Jones*, the court held that a § 502(a)(3) claim challenging the interpretation of a plan's terms concerning distributions was duplicative of a § 502(a)(1)(B) claim on the same issue.

Looking to the substance of Plaintiff's claims, Plaintiff alleges both a § 502(a)(1)(B) benefit claim alleging that the Defendants failed to correctly interpret the Plan's terms regarding Deferral Contributions, and a breach of fiduciary duty claim under § 502(a)(3) seeking equitable relief based on the same alleged conduct. (Count I, ¶¶ 38-43; Count III, ¶¶ 54-60.) Plaintiff's breach of fiduciary duty claims seek declaratory and injunctive relief and any other appropriate equitable remedies recognizing the putative class's rights to the benefits at issue. *See* ¶ 60. Said another way, Plaintiff seeks a clarification of the rights to benefits under the Plan—a remedy provided under § 502(a)(1)(B) and requested in Plaintiff's Benefit Claim. *See* ¶ 43. Further evidencing that Plaintiff's § 502(a)(3) claim is a repackaging of his § 502(a)(1)(B) claim is the fact

22

that both claims are premised on the same set of facts and allegations:

| § 502(a)(1)(B) Benefit Claim | § 502(a)(3) Fiduciary Breach Claim |
|---|---|
| ¶ 40:  Pursuant to the Plan Document, Plaintiff and the Class were (and are) entitled to contribute a portion of their reported tips based on their deferral elections, and receive benefits based on those contributions. | ¶ 56:  Pursuant to the 401(k) Plan Document, Plaintiff and the Class were entitled to contribute a portion of their reported tips based on their deferral elections, and receive benefits based on those contributions. |
| ¶ 41:  Defendants acted contrary to the Plan Document by preventing Plaintiff and the Class from contributing a portion of their reported tips based on their deferral elections. | ¶ 57:  Defendants refused, and continue to refuse, to comply with the terms of the Plan with respect to Plaintiff's and the Class's rights to contribute a portion of their reported tips to the Plan based on their deferral elections, and receive benefits based on those contributions.<br><br>¶ 58:  Defendants "imprudently" interpreted the Plan and "adopted an arbitrary position." |

Accordingly, like *Jones*, *Leach* and *George*, Plaintiff's § 502(a)(3) claim is simply a repackaged benefit claim.  Even though his benefit claim is unsuccessful, because Plaintiff has adequate redress through § 502(a)(1)(B), he cannot likewise pursue claims under § 502(a)(3) for equitable relief.  Plaintiff's § 502(a)(3) Claim must be dismissed.

**B.    Plaintiff Does Not Plausibly Allege A Fiduciary Breach Claim under §§ 502(a)(2) or 502(a)(3)**

Even if Plaintiff's § 502(a)(3) Claim is not duplicative, both breach of fiduciary duty claims fail because none of Plaintiff's theories satisfy the elements of a fiduciary breach claim, which are: (1) that Defendants were acting in a fiduciary capacity, (2) a breach, and (3) a loss.  *See Darcangelo v. Verizon Commc'ns Inc.*, 292 F.3d 181, 192 (4th Cir. 2002); *Tatum v. R.J. Reynolds Tobacco Co.*, No. 02-cv-00373, 2007 U.S. Dist. LEXIS 39801, at *29 (M.D.N.C. May 31, 2007).

**1.    Defendants Did Not Administer the Plan Contrary to Its Terms**

Plaintiff alleges that Plan fiduciaries breached their ERISA duties by administering the Plan contrary to the Plan document's terms.  ¶¶ 47, 57-58.  This theory is easily disposed of because

Defendants acted in accordance with the Plan terms. *See supra* pp. 15-20; *Knepper*, 2019 U.S. Dist. LEXIS 168037, at *44 (dismissing § 502(a)(3) breach of fiduciary duty claim where plaintiff did not plausibly allege that defendants misinterpreted the plan or otherwise violated ERISA); *see also Bennett v. Conrail Matched Sav. Plan Admin. Comm.,* Nos. 97-cv-4535, 97-cv-5017, 97-cv-5345, 1997 U.S. Dist. LEXIS 17295, at **22-23 (E.D. Pa. Oct. 30, 1997) (dismissing fiduciary breach claim where defendants followed the Plan terms).

### 2.  There is No Cognizable Claim for Jeopardizing the Tax-Qualified Status of the Plan

Trying desperately to create an actionable breach of fiduciary duty claim, Plaintiff next alleges that Plan fiduciaries breached their ERISA duties by administering the Plan in a way that jeopardized the Plan's tax qualified status.  ¶¶ 47, 58.  As an initial matter, there is no private right of action to enforce the Code's provisions and Plaintiff cannot use ERISA's remedial scheme to create such a right of action.  *See West v. Clarke Murphy, Jr. Self Employed Pension Plan*, 99 F.3d 166, 169 (4th Cir. 1996) (requirements in the Tax Code, such as requirements to be considered a qualified plan under Code § 401, "do not alter ERISA's requirements"); *Stamper v. Total Petroleum, Inc. Ret. Plan*, 188 F.3d 1233, 1237-39 (10th Cir. 1999); *Reklau v. Merch. Nat'l Corp.*, 808 F.2d 628, 631 (7th Cir. 1986); *Hollowell v. Cincinnati Ventilating Co.*, 711 F. Supp. 2d 751, 770-71 (E.D. Ky. 2010) (dismissing an ERISA fiduciary breach claim alleging that plan fiduciaries violated the Code); *see also Sposato v. First Mariner Bank*, No. 12-cv-1569-CCB, 2013 U.S. Dist. LEXIS 45806, at *10 (D. Md. Mar. 28, 2013) (Blake, J.).

Moreover, Plaintiff offers absolutely no explanation of how the Plan's tax qualified status was endangered.  Given the conclusory nature of this claim, it should be dismissed.  *See Malkani v. Clark Consulting, Inc.*, 727 F. Supp. 2d 444, 450 (D. Md. 2010), *aff'd*, No. 10-2008, 2011 U.S. App. LEXIS 15980 (Aug. 1, 2011) (dismissing claim alleging that defendants risked the tax-

qualified status of a defined contribution plan where the complaint did not allege which "provisions of the tax code the Plan has supposedly violated, what potential penalties the Plan allegedly faces, or any reason why the Plan would face tax disqualification."); *Hollowell*, 711 F. Supp. 2d at 771.

Assuming, however, that Plaintiff's argument is similar to what was asserted in the administrative review process, *i.e.,* that the Plan would lose tax qualification under Code § 401(a) by failing to effect participants' elected rates for Deferral Contributions, the argument fails. Defendants followed the terms of the Plan and did not "miss" any deferrals. A missed deferral is an operational error that occurs when a mistake is made that causes the plan sponsor to contribute less into the 401(k) plan. *See e.g.*, *Little Wound Sch. v. Am. United Life Ins. Co.*, No. 17-cv-5017, 2018 U.S. Dist. LEXIS 35648, at *4 (D.S.D. Mar. 5, 2018) (describing missed deferrals resulting from a misinterpretation of the plan's definition of compensation); *Fixing Common Plan Mistakes – Correcting a Failure to Effect Employee Deferral Elections*, https://www.irs.gov/retirement-plans/fixing-common-plan-mistakes-correcting-a-failure-to-effect-employee-deferral-elections. But there was no mistake here. Defendants did not "miss" any deferrals; they construed the Plan's legally compliant terms correctly to determine that such deferrals could not be made because there was insufficient money in Plaintiff's paycheck to do so. Since there has been no error, the Plan's qualified status is not at risk, and Plaintiff's claim fails as a matter of law.[20]

---

[20] Plaintiff also lacks standing to assert a breach of fiduciary duty claim based on the potential disqualification of the Plan because such a harm is too speculative to confer Article III standing. *See Malkani v. Clark Consulting, Inc.*, 727 F. Supp. 2d at 450-51. Accordingly, this claim should also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). *Id.*

### 3.    Host Does Not Act in its Fiduciary Capacity When Implementing Its Tip Policy

Plaintiff next alleges that Plan fiduciaries breached ERISA duties by "demand[ing] that participants convert the tips to cash at the end of each shift, thereby avoiding the need to follow the participant's" deferral elections.  ¶¶ 50, 59.  This theory also fails because the adoption and implementation of Host's tip policy is not a fiduciary function and thus cannot form the basis of a fiduciary breach claim.[21]

"[F]iduciary status under ERISA is not an all-or-nothing concept."  *Darcangelo*, 292 F.3d at 192.  The same entity can operate as a fiduciary in some contexts, and not in others.  *Id.* Accordingly, "[i]n every case charging breach of ERISA fiduciary duty, . . . the threshold question is . . . whether that person was acting as a fiduciary . . . when taking the action subject to complaint."  *Pegram v. Herdich*, 530 U.S. 211, 226 (2000); *Darcangelo*, 292 F.3d at 192.  In making that determination, courts must consider "whether the acts in question were like traditional fiduciary decisions, which are typically decisions about managing assets and distributing property to beneficiaries."  *Darcangelo*, 292 F.3d at 193.  Establishing and implementing corporate policies that have nothing to do with the management of plan assets are settlor function activities, not fiduciary functions.  *See Beavers v. Am. Cast Iron Pipe Co.*, 751 F. Supp. 956, 959, 965 (N.D. Ala. 1990) (finding "no basis in law" for an ERISA fiduciary breach claim alleging that defendants' corporate policy caused them to lose entitlement to benefits), *rev'd on other grounds*, 975 F.2d 792 (11th Cir. 1992).

---

[21] This theory does reveal Plaintiff's true source of discontent:  it is not the application of the ERISA plan language or his ill-pled ERISA theories.  Instead, Plaintiff attacks the Host system of converting tips to cash at the end of the night.  But Plaintiff cites no authority as a basis to challenge this well-accepted practice.

Here, Host's establishment and implementation of its tip policy and payroll practices are corporate functions that are independent of their fiduciary duties to manage Plan assets and administer the Plan. *See, e.g., Steele*, 826 F.3d at 241 (describing the employer's decision to pay credit card tips in cash as a "business decision"). Defendants cannot be held liable for a fiduciary breach where they do not act in a fiduciary capacity. Accordingly, this theory also does not support Plaintiff's fiduciary breach claim.

### 4. Plaintiff Does Not Allege A Loss to the Plan to Support His § 502(a)(2) Claim

ERISA § 502(a)(2) provides relief for a fiduciary breach that causes a loss to the Plan as a whole. 29 U.S.C. § 1109(a), ERISA § 409(a); ERISA § 502(a)(2); *David v. Alphin*, 704 F.3d 327, 332 (4th Cir. 2013). In an attempt to state such a claim, Plaintiff alleges that that Defendants' breaches caused losses to the Plan in the form of reduced Deferral and Matching Contributions. ¶ 51. Putting aside that Plaintiff does not plausibly allege fiduciary conduct or a breach (*see supra* pp. 23-26), Plaintiff's § 502(a)(2) claim fails because no such losses occurred.

On an after-tax basis, the Plan's Arrears Contributions procedure allows a participant to contribute to the Plan any portion of his elected pre-tax deferral that he cannot defer from his paycheck because his "effectively available Compensation" is insufficient. SPD § IV(D). Those after-tax contributions are matched by Host just as pre-tax contributions are. SPD § IV(E); Plan §1.11(c)(2) *as modified by* the Additional Provisions Addendum at § (4). Because of Arrears contributions, participants do not lose the opportunity to make employee contributions[22] and the

---

[22]Plaintiff does not allege that he ever took advantage of the Arrears Contribution option. His alleged loss occurred because of his own inaction. Plaintiff had every right to retain the cash from his cash tips (which he ignores in his Complaint) and cashed out credit card tips. The Plan terms permitted him to contribute those tipped proceeds to the Plan; he did not. Had Plaintiff made an Arrears contribution, Host would have matched that contribution as described in the Plan.

Plan has the opportunity to receive matching employer contributions,[23] all contrary to Plaintiff's assertions.

To the extent that Plaintiff claims he suffers adverse tax consequences by contributing to the Plan on an after-tax basis, that argument is a red herring. A participant is not taxed on his Plan distributions resulting from after-tax deferrals; he is taxed on distributions resulting from pre-tax employee contributions and earnings thereon. *Id.* These taxation issues result in no loss to participants or the Plan and fail to implicate ERISA § 502(a)(2).

Plaintiff's fiduciary breach claims should be dismissed with prejudice.

## III. Plaintiff Does Not Plausibly Allege an ERISA § 510 Claim

Plaintiff alleges that Defendants violated ERISA § 510 by interfering with Plaintiff's attainment of rights under ERISA. ¶¶ 42, 52, 59. Specifically, Plaintiff alleges that highly compensated and non-tipped employees are permitted to make pre-tax deferrals based on the entirety of their reported income, whereas tipped employees are not. ¶ 52.

ERISA § 510 provides, in relevant part, that it is unlawful for any person to "discriminate against a participant or beneficiary […] for the purpose of interfering with the attainment of any right to which such participant may become entitled under the Plan or ERISA. To state a § 510 claim, Plaintiff must sufficiently allege: "1) that there was an adverse employment action, 2) that such action was taken with the purpose of interference with benefits, 3) and that he was otherwise eligible for the benefit." *Obazee v. Wells Fargo Advisors*, *LLC*, No. 10-cv-215, 2010 U.S. Dist. LEXIS 92107, at *9 (E.D. Va. Sep. 3, 2010) (citing *Conkwright v. Westinghouse Elec. Corp.*, 933

---

[23] Plaintiff also admits that in 2018 he contributed 11.5% of his Compensation through pre-tax deferrals, *see* Ex. A at A-05; therefore, he received 100% of his eligible employer matching contributions since the Plan only matches up to 6% of Compensation. *See* AA § 1.11(a)(3); VS § 5.08; SPD §§ IV(E)-(F).

F.2d 231, 237 (4th Cir. 1991)). With respect to the second prong, the Fourth Circuit requires allegations of a specific intent to interfere with benefits. *Id.* Plaintiff does not allege an adverse action within the scope of § 510, nor Defendants' specific intent, so his claim must be dismissed.

### A. Plaintiff Does Not Allege an Adverse Action Protected by § 510

The purpose of § 510 is to "prevent[] unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." *Conkwright*, 933 F.2d at 237. Consequently, ERISA § 510 claims are limited to actions affecting the employer-employee relationship giving rise to an entitlement to benefits. *Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473, 1484 (4th Cir. 1996) (en banc). Because a claim challenging the benefits provided under a plan does not implicate the employer-employee relationship, it is not actionable under § 510. *See Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 421 (4th Cir. 1993); *Yarber*, 944 F. Supp. 2d at 450 (dismissing § 510 claim that alleged discrimination in the benefits offered, not the employment relationship); *Gross v. St. Agnes Health Care, Inc.*, No. 12-cv-2990-ELH, 2013 U.S. Dist. LEXIS 130291, at *54 (D. Md. Sep. 12, 2013) (dismissing plaintiff's § 510 claim challenging benefits provided under the plan rather than alleging any type of adverse employment action); *see also Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 509 (6th Cir. 2004) (§ "510 offers no protection against an employer's actions affecting the status or scope of an ERISA plan"). Such a limit is logical in light of the broad discretion afforded to employers in designing their benefit plans. *See Coomer*, 370 F.3d at 508-09.

Here, Plaintiff does not allege that Defendants took any adverse employment action, or any action related to his employment. Instead, he claims Host designed the Plan to favor non-tipped employees. But ERISA § 510 does not regulate this type of claim as "benefit discrimination" and therefore it must be dismissed.

**B.    Plaintiff Does Not Allege That Host Acted with the Specific Intent to Discriminate Against Tipped Employees**

Plaintiff also fails to allege plausibly that Defendants had the requisite specific intent to interfere with his right to benefits.  *Obazee*, 2010 U.S. Dist. LEXIS 92107, at *9   (citing *Conkwright*, 933 F.2d at 237).  Distinctions or differences in benefits provided under a plan that are merely incidental of legitimate business decisions are not the product of specific intent.  *Obazee*, 2010 U.S. Dist. LEXIS 92107, at **11-12.

Plaintiff relies on the conclusory allegation that Defendants "knowingly and intentionally interfered with the rights of tipped employees," without any factual allegations to support this conclusion.  He does not allege why Host targeted tipped employees and what benefit they reaped from allegedly doing so.  The Court cannot plausibly infer specific intent from such bare-bones allegations.  To the contrary, the plausible inference to be drawn from the Complaint is that the shortfall that Plaintiff challenges is an incidental result of Host's corporate tip policy and payroll practices.  Host's conduct does not support a § 510 claim.

**IV.    Dismissal of the Complaint with Prejudice Is Proper**

The Court has discretion to dismiss the Complaint with prejudice if amendment of the complaint would fail to cure its defects.  *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825-26 (D. Md. 2013) (Quarles, J.); *Wagner v. Econ. Rent-A-Car Corp.*, No. RDB-19-0180, 2020 U.S. Dist. LEXIS 36515, at *15 (D. Md. Mar. 3, 2020) (Bennett, J.).  Where a complaint is dismissed because the facts alleged do not give rise to relief under the law, dismissal with prejudice is appropriate.  *See Wagner*, 2020 U.S. Dist. LEXIS 36515 at *15 (dismissing with prejudice where the alleged facts, taken as true, did not support any claim for relief); *Townes Telecomms., Inc. v. Nat'l Telecomms. Coop. Ass'n*, No. 19-cv-436, 2020 U.S. Dist. LEXIS 21683, at *16 (E.D. Va. Feb. 7, 2020) (same); *Gross*, 2013 U.S. Dist. LEXIS 130291 at *18

(dismissal with prejudice is warranted where the amended complaint would still fail Rule 12(b)(6)'s pleading standards).

Here, Plaintiff's Complaint should be dismissed with prejudice without leave to amend. The facts Plaintiff alleges are not in dispute. Instead, dismissal is warranted because even taking all facts as true, there is no legal basis for any of Plaintiff's claims: Host's tip policy is legal, the Plan terms were followed, and no other cognizable ERISA claims exist. An amended complaint will not change this; an amendment will not cure the Complaint's defects and would be futile.

## CONCLUSION

For the reasons set forth above, Plaintiff's Complaint should be dismissed in its entirety with prejudice.

Dated: August 20, 2020

<div style="margin-left:40%">

**JACKSON LEWIS P.C.**

*/s/ Bernard G. Dennis*
Bernard G. Dennis (Bar. No. 13903)
10701 Parkridge Blvd. Suite 300
Reston, VA 20191
Telephone: (703) 483-8300
Facsimile: (703) 483-8301
Bernard.Dennis@jacksonlewis.com

Howard Shapiro*
Stacey C.S. Cerrone*
Lindsey H. Chopin*
650 Poydras Street, Suite 1900
New Orleans, LA 70130
Telephone: (504) 208-1755
Facsimile: (504) 208-1759
Howard.Shapiro@jacksonlewis.com
Stacey.Cerrone@jacksonlewis.com
Lindsey.Chopin@jacksonlewis.com

***Attorneys for Defendants***

***\*Admitted Pro Hac Vice***

</div>

## **CERTIFICATE OF SERVICE**

I CERTIFY that, on August 20, 2020, a true and accurate copy of the foregoing

*Memorandum In Support Of Defendants' Motion to Dismiss Plaintiff's Complaint* was

electronically filed with the Clerk's Office using this Court's electronic filing system, which

will then send a notice of electronic filing to the following:

    Timothy F. Maloney
    Alyse L. Prawde
    Joseph Greenwald & Laake, P.A.
    6404 Ivy Lane, Suite 400
    Greenbelt, MD 20770
    (301) 220-2200 (Tel)
    tmaloney@jgllaw.com
    aprawde@jgllaw.com

                      /s/ Bernard G. Dennis, III
                      Bernard G. Dennis, III